David Y. H. WANG and Lillian Y. Wang, Plaintiffs-Appellants,

v.

LAKE MAXINHALL ESTATES, INC., et al., Defendants-Appellees.

No. 75–1375.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 22, 1975.

Decided March 12, 1976.

Charles L. Whistler, Arthur H. Northrup, Indianapolis, Ind., for defendants-appellees.

Before STEVENS, Circuit Justice,* TONE, Circuit Judge, and KUNZIG, Judge.**

STEVENS, Circuit Justice.

Plaintiffs claim that they were denied the opportunity to purchase a vacant lot in an all white development because they are not Caucasians. They submitted a written offer for the full asking price of $18,000. Defendants neither accepted nor rejected the offer before it expired, but decided thereafter that plaintiffs were not acceptable purchasers and so notified them. Without considering whether plaintiffs' race was a factor in defendants' decision, the district court entered summary judgment on the ground that the case had been mooted by the fact that plaintiffs' offer expired before defendants responded to it. On appeal, plaintiffs correctly argue that the case is not moot, that discriminatory negotiations may be actionable, and that the record contains sufficient evidence of discrimination to preclude the entry of summary judgment. Accordingly, we reverse and remand for trial.

For the purpose of this appeal we accept as true the undenied factual allegations in plaintiffs' verified complaint[1] and the uncontradicted statements in defendants' affidavits. All inferences, of course, must be drawn in plaintiffs' favor since the summary judgment was entered against them. Even though matter called to the court's attention in support of Plaintiffs' Motion For Relief From Judgment and Order tends to support their claim,[2] we confine our

Morris L. Klapper, Ronald G. Isaac, Indianapolis, Ind., for plaintiffs-appellants.

* Mr. Justice Stevens participated initially as Circuit Judge, and on and after December 19, 1975, as Circuit Justice.

** The Honorable Robert L. Kunzig of the United States Court of Claims is sitting by designation.

1. Plaintiffs invoked the jurisdiction of the Federal District Court pursuant to 28 U.S.C. § 1343(3) and (4) and 42 U.S.C. § 3612. Although the statutory citations in the complaint are not entirely accurate, the claim for relief appears to have been based on 42 U.S.C. §§ 1981, 1982 and 3604 and the Thirteenth Amendment to the United States Constitution. Plaintiffs requested actual damages of $8,500, punitive damages, and injunctive and declaratory relief.

2. For example, an affidavit executed by the real estate broker employed by the plaintiffs, who was herself a resident of Lake Maxinhall Estates, stated in part:

statement to facts in the record when the District Court first entered summary judgment in favor of defendants.

Plaintiffs are qualified purchasers. David Y. H. Wang is a staff consultant for the Indiana Bell Telephone Company; Lillian Y. Wang is employed by the Department of Medicine and Genetics of the Indiana University Medical School. They are married and have three children. Their financial responsibility is unchallenged. They are United States citizens of Chinese descent.

The defendants include the corporate owner of vacant land in Lake Maxinhall Estates, Indianapolis, Indiana,[3] the owner's broker,[4] an association of lot owners (hereinafter "the Club"),[5] and members of the Club's so-called "Lot Owners Committee."[6] The defendants had agreed that before any lot in the subdivision was sold, the proposed purchaser must receive the written approval of the Lot Owners Committee. The record does not disclose the criteria on which the Committee bases its approval or disapproval of prospective purchasers.[7]

In their complaint, plaintiffs allege that the defendants, acting individually or in concert, refused to negotiate with them for the sale of a lake lot, refused to sell them a lake lot, and refused to approve them as purchasers, all because they are of Chinese descent.

Some time prior to June 8, 1974, the defendant corporation placed its lake lot 21 on the market for sale at an asking price of $18,000. On June 8, plaintiffs offered to buy lot 21 for $15,250. That offer was rejected on June 12; on the same day, plaintiffs submitted a new offer at the full asking price. By its terms that offer was to expire on June 18; however, since plaintiffs received no response to their offer on June 18, they extended its duration until June 21.

On June 21 the president of the defendant broker phoned the plaintiffs and told them that the Lot Owners Committee had not yet met to consider their offer, but probably would do so that weekend. Plaintiffs did not at that time extend their offer; however, there is nothing in the record to suggest that they were no longer interested in purchasing the lot, that they gave any such indication to the broker, or that the broker asked them to extend their offer again. Without further communication be-

"It is customary in the sale of real estate in this community . . . to respond to full price offers for the sale of real estate or at the very least to ask for extensions of time in which to make a response to an offer if there is some reason why a full price offer cannot be immediately accepted.

\* \* \* \* \* \*

"During the time that the Wangs were attempting to purchase the lot from defendant, the defendant and its agent evidenced an unwillingness to discuss the matter and any conversations regarding the sale had to be initiated by myself or the Wangs."

Moreover, in his deposition testimony, Thomas P. McNally quoted the Chairman of the Lot Owners Committee as having stated:

"[A] Chinaman was trying to buy a lot in Lake Maxinhall and that we wouldn't let him."

3. Lake Maxinhall Estates, Inc., is an Indiana corporation.

4. Hall Hottel Co., Inc.

5. The association is named Lake Maxinhall Club.

6. William P. Goodman, Max Barney, Millard L. Hall, Richard E. McDonald and George T. Purves. Mr. Barney and Mr. Hall are also shareholders and officers of Lake Maxinhall Estates, Inc.

7. The relevant rules provided in part:

"14. SALE OF LOT. APPROVAL OF PURCHASER. Before any lot is sold in this addition, either by the corporation or by any present or subsequent owner, the name and identity of the proposed purchaser shall be submitted to said committee for approval. The committee shall make a written record of its approval or disapproval of such purchaser and shall notify the proposed seller of said lot in writing. If the proposed purchaser is approved by said committee and said lot is sold to such purchaser, such purchaser shall enjoy all the privileges and be subject to the same conditions as the seller and as lot owners generally in said addition, but if the committee does not approve such purchaser and said seller proceeds to sell said lot to such purchaser, the latter shall not acquire any right in said easement nor any right to the use of said lake."

tween the parties, the Lot Owners Committee met on June 29 and voted unanimously to disapprove plaintiffs as purchasers. In a letter dated July 3, 1974, the Committee advised the plaintiffs of that action. The basis for the disapproval was not explained.

On July 19, 1974, a third party made an offer of $17,500 for Lot 21. On July 22, the Lot Owners Committee was advised of that offer and approved it the next day. The offer was accepted on July 24, 1974.

On the preceding day, July 23, the Marion County Court had dismissed an action brought against defendants by the Indianapolis Marion County Human Rights Commission. That action had been commenced as a result of the complaint filed with the Commission by plaintiffs. Until the action was dismissed, a temporary restraining order had prevented defendants from selling the lot. The dismissal was based on the state judge's determination that the action was "moot" because plaintiffs permitted their offer to expire.[8]

This mootness rationale was also adopted by the federal district judge as the basis for the entry of the summary judgment before us for review. He stated that the "inability of the defendant to act on the June 18 offer was due to plaintiffs' acts in allowing it to expire . . . and not to any racial animus on the part of the defendants."[9] We cannot accept the District Court's mootness rationale, or the factual conclusion that there is no basis for inferring that racial animus on the part of the defendants played a part in frustrating plaintiffs' obvious desire to purchase a vacant lot in Lake Maxinhall Estates.

Our task when reviewing a summary judgment is, of course, quite different from the review of a judgment entered after a full trial. We must view the evidence, and the inferences which may be drawn therefrom, most favorably to the party against whom the summary judgment was entered. Moreover, when the ultimate factual issue may turn on an appraisal of the defendants' motivation, it is especially important not to foreclose cross-examination and the adversary testing of the evidence in front of the trier of fact who can observe the demeanor of the witness. *Conrad v. Delta Airlines, Inc.,* 494 F.2d 914, 918 (7th Cir. 1974); cf. *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458, 464 (1962). We start, then, by considering what inferences and conclusions might be established by plaintiffs at trial rather than by confining our inquiry to that which has in fact been demonstrated.

Surely the facts of record are sufficient to suggest that racial animus may have tainted the negotiations between the parties.[10] Three undisputed facts are suffi-

---

**8.** The record does not show exactly what was in issue in this State court case. However, a temporary restraining order was issued preventing the corporation from selling Lot 21 to anyone other than plaintiffs. This order expired on July 17, 1974.

**9.** The critical portion of his opinion reads as follows:

"In the instant case plaintiffs allowed their offer to purchase to expire prior to any decision by the defendants to accept or reject it. Further, they allowed the offer to expire with direct knowledge that the offer had not yet been acted on and with direct knowledge that it could not be acted on prior to its expiration.

"When plaintiffs made a new offer to purchase on July 24, 1974, the defendants could not accept it because the lot to which the offer was directed was sold. There is absolutely no evidence that defendant has refused to allow plaintiffs to make any offer they choose and no evidence that any offer made was rejected because of plaintiff's race. In short, the inability of the defendants to act on the June 18 offer was due to plaintiffs' acts in allowing it to expire, and the inability of the defendants to accept the July 24 offer was due to the fact that the lot in question had been sold and not to any racial animus on the part of the defendants."

**10.** Defendants suggest that they are entitled to summary judgment because plaintiffs failed to submit any affidavits in opposition to defendants' motion for summary judgment. However, this failure leads only to the court's acceptance as true of the facts set forth in the defendants' affidavits and answers to interrogatories. Rule 9, Rules of the United States District Court, Southern District of Indiana. To the extent they were not controverted by defendants' affidavits, the allegations of plaintiffs' complaint are also taken as true. F.R. Civ.P. 56(c).

cient to withstand the motion for summary judgment, provided, of course, that the case is not moot.

First, the rule requiring Committee approval of all prospective purchasers contains no standard by which the decision to approve or to disapprove an applicant is to be guided. In the context of this case, it is not fanciful to infer from the complete absence of any objective criteria that the Committee approval is actually a mechanism by which persons of certain race, nationality, or religion may be excluded.

Second, the contrast between the timing of the Committee response to plaintiffs' full price offer and the response to a later offer by a third party for less than the full price at least suggests the possibility that racial considerations were involved. The fact that plaintiffs were prospective purchasers became known on June 15, and their full price offer was made on June 18; yet they received no response from the Committee until July 3. On the other hand, the Committee approved the lesser offer, made on July 19, the day after it learned the identity of the new offerors. The disparate treatment may well be explicable in a full trial, but on summary judgment plaintiffs are entitled to the inference that race may have affected the timing of the Committee action.

Finally, the defendants' reaction to the fact that plaintiffs' full price offer expired by its terms on June 21 is itself suspect. If the defendants, who were engaged in the business of selling real estate, were not at all concerned about the fact that plaintiffs

were nonwhites, it is difficult to understand why they did not even ask the plaintiffs to extend their full price offer until the Committee could meet or, alternatively, if they really thought that the June 21 date was an ultimatum, why they made no effort to convene the Committee in advance of that date. It is not unreasonable to infer that in the real world of business defendants well knew that plaintiffs would not cease being prospective purchasers simply because their offer was about to expire.[11] Nor is it impermissible for plaintiffs to ask us to infer that defendants' failure to pursue negotiations at that point was influenced by racial considerations.

■ Drawing all inferences in plaintiffs' favor, as we must, we conclude that there is at least a possibility that plaintiffs' offer was not accepted before it expired or, alternatively, that defendants failed to make an acceptable counteroffer, because of defendants' reluctance to sell to nonwhites. If that be true, plaintiffs' statutory rights have been violated.

■ The case is not moot because if we accept plaintiffs' view of the facts they are entitled to some relief. We need not address the relief issue at this time except to note that our prior decisions would lend support to either a damage award or an appropriate injunction. *See Seaton v. Sky Realty Company, Inc.,* 491 F.2d 634, 636–638 (7th Cir. 1974); *Smith v. Sol D. Adler Realty Co.,* 436 F.2d 344, 351 (7th Cir. 1970).[12]

REVERSED AND REMANDED.

11. This inference is consistent with the fact that the members of the Committee actually did meet and disapproved of the plaintiffs as purchasers on June 29; apparently they did not consider the possibility of a transaction entirely closed.

12. We note that plaintiffs have stated a possible case against each of the defendants. If it can be shown that the Lot Owners Committee rejected the Wangs, in whole or in part, because of their race, the members of that committee have violated the law. *Tillman v. Wheaton-Haven Recreation Ass'n, Inc.,* 410 U.S. 431, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973). If it can be shown that Lake Maxinhall Estates, Inc.,

had no intention of selling to the Wangs, but submitted their application to the Lot Owners Committee knowing that they would be rejected, or, as developer of the project, arranged the easement granting procedure so that nonwhites would be excluded, it will have been shown to have violated the law. *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968); *Newbern v. Lake Lorelei, Inc.,* 308 F.Supp. 407 (S.D.Ohio, 1968). If Hall-Hottel Co., the broker, can be shown to have knowingly participated in discrimination, it will have been shown to have violated the law. *Cf. Seaton v. Sky Realty Co., Inc.,* 491 F.2d 634 (7th Cir. 1974).