UNITED STATES of America, Plaintiff,

v.

Maggielean PRESIDENT, Janice Delridge, Carrie Lyons, Defendants.

No. 84 C 2222.

United States District Court,
N.D. Illinois, E.D.

July 30, 1984.

Dan K. Webb, U.S. Atty., by Martin Lowery, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Roger Harris, Harris & Goldstein, Chicago, Ill., for defendant President.

Ira Miller, Chicago, Ill., for defendant Delridge.

Martin B. Shapiro, Martin B. Shapiro & Associates, Chicago, Ill., for defendant Lyons.

## ORDER

BUA, District Judge.

The instant suit involves claims against the defendants for defrauding the government. Before the Court is defendant President's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, or, in the alternative, to strike any claims dating before March 16, 1978 as barred by the applicable statutes of limitation. Defendant Delridge makes the same motion on the same premises as President. Also pending is the plaintiff's motion for summary judgment against defendants President and Lyons, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure.

For the reasons stated herein, President and Delridge's motions are denied and the United States' motion for summary judgment against President and Lyons is granted.

### I.

The government's motion for summary judgment is supported by various affidavits and other documents. These include an affidavit of Bonita Mullins, Special Agent, Office of the Inspector General of the United States Department of Labor, an affidavit of defendant Maggielean President, an affidavit of defendant Carrie Lyons, defendant President's Official Personnel Folder, false claim vouchers admittedly prepared by defendant President, and canceled checks made out to President under various names, defendant Delridge, and defendant Lyons. From these documents, the following undisputed facts may be gleaned.

Maggielean President was employed at the U.S. Post Office in Chicago as a distribution clerk and mail handler from December 22, 1965 through May 24, 1969, when she transferred to the U.S. Department of Labor, Office of Workers' Compensation Programs. From July 23, 1972 until April 20, 1980, Maggielean worked as a claims and benefit payment roll clerk. Her duties in this position included the preparation of compensation and medical bill payment vouchers. On April 20, 1980, she was given a promotion to Lead Benefit Payment Roll Clerk. On August 22, 1980, President was terminated by the Department of Labor "for falsification of official documents and use of confidential files for personal benefit." This termination was unrelated to the acts complained of in the instant case.

In September, 1983, the Portland, Oregon office of the IRS, Criminal Investigations Division, contacted the Department of Labor and requested information relative to Janice Delridge and her receipt of Department of Labor funds. When a search of Department of Labor records revealed that Delridge was not a Workers' Compensation claimant, but nevertheless was a payee named on payment vouchers, the Office of the Inspector General of the Department of Labor started an investigation which resulted in the discovery that over 120 payment vouchers had been altered,

causing fraudulent payments to be issued to Maggielean President under the aliases of M.L. Gillon, M.L. Matthews, and Maggielean Dunlap or Dunlop. (President's maiden name is Matthews and her former married name was Gillon. Dunlap or Dunlop are aliases used by her.) Fraudulent payments were also issued to Janice Delridge, President's sister, and Carrie Lyons, who formerly worked with President.

During the afternoon of March 16, 1984, Special Agents Mullins and Knapstein interviewed President in the kitchen of her home. During the interview, President admitted to altering the payment vouchers which resulted in the false compensation payments being sent to her, Delridge, and Lyons. She also admitted that the payments had been discussed by her with Delridge and Lyons and that her two co-defendants knew that the payments were not the result of bona fide compensation claims. President then signed an affidavit in which she admits to altering the payment vouchers and to causing the fraudulent payments to be sent to the three defendants.

Also on March 16, 1984, Agents Mullins and Knapstein interviewed Lyons in her home. At the interview and in an affidavit signed at that time, Lyons admitted that she was receiving compensation checks which she was not rightfully entitled to as they were not for a legitimate claim, and that President had caused such checks to be issued. While Lyons now claims that she requested President to stop sending the checks, she makes no mention of ever attempting to return her ill-gotten gains.

## II.

This is a civil complaint in four counts brought by the United States against defendant President and co-defendants Delridge and Lyons. The amended complaint alleges in Count I that President, in the course of her employment, caused to be falsely issued 131 United States Treasury checks totaling $628,960.78 made payable to M.L. Gillon, M.L. Matthews, Maggielean Dunlap or Dunlop, Janice Delridge and Carrie Lyons. It is further alleged that these checks were issued pursuant to a conspiracy among the defendants to embezzle this sum from the United States.

In Count I, the United States also alleges that of the total of $628,960.78 embezzled, President received $355,166.30, Delridge received $233,345.66, and Lyons received $40,448.82. The United States claims that by this conduct, President violated the fiduciary duty she owed to the plaintiff and breached her employment contract. In relief, the plaintiff asks for a judgment of $628,960.78 plus interest and costs of this suit against President.

In Count II, the United States claims that as a result of the actions and conspiracies alleged in Count I, President, Delridge, and Lyons have received monies of the United States obtained by fraud, and failed to remit, return or account for said monies. The plaintiff asks for an accounting with respect to all monies and all real and personal property derived therefrom, and further asks that this court impose upon the defendants a constructive trust, or trust *ex maleficio*, on all property, earnings, income, profits, proceeds, benefits, or things of value resulting from the defendants' alleged misconduct.

In Count III, the plaintiff claims that by their conduct and through their conspiracy, the defendants violated the Federal False Claims Act, 31 U.S.C. § 3729 *et seq.* The United States asks for judgment against the defendants in the amount of double its damages and such statutory forfeitures as are allowable under the Act.

In Count IV, the United States claims that as a result of their conduct and the conspiracy or conspiracies among them, the defendants were unjustly enriched. It therefore asks for judgment against defendant President in the amount of $355,-166.30, against defendant Delridge in the amount of $233,345.66, and against defendant Lyons in the amount of $40,448.82.

## III.

The uncontested facts of the case, noted above, support each of the plaintiff's claims for relief against President and Lyons. Defendants President and Lyons, against

whom the summary judgment motion is brought, do not contest the substance of the motion or contend that genuine issues of material fact exist. Instead, these defendants have moved to strike the motion for summary judgment based on essentially the same assertions contained in motions to dismiss the complaint which have been filed by President as well as defendant Delridge, against whom no summary judgment motion has been filed.

## IV.

By way of her motion to strike, President claims that the information upon which this complaint is based was obtained in violation of 26 U.S.C. § 6103, and therefore should be excluded. President also claims that her affidavit was taken in violation of her Fifth Amendment right against self-incrimination as defined by *Miranda*. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In her motion to dismiss, President again raises the violation of 26 U.S.C. § 6103, claiming that as a result the entire complaint is tainted and should be dismissed. In this motion President also alleges that the applicable statutes of limitation, contained in 28 U.S.C. § 2415(a) and (b) and 31 U.S.C. § 235, bar any action for those fraudulent payments made prior to March 16, 1978. The Court will consider the motion to dismiss and the motion to strike as one.

## V.

The statute that President claims violation of, 26 U.S.C. § 6103, governs the confidentiality and disclosure of income tax returns and return information. The general rule established by this statute is that returns and return information shall be confidential except for disclosures authorized by that statute. 26 U.S.C. § 6103(a). Two provisions of this section are pertinent to President's claim that this statute was violated. Paragraph (i) subsection (3) provides in part that "the Secretary may disclose in writing return information ... which may constitute evidence of a violation of any federal criminal law (not involving tax administration) to the extent necessary to apprise the head of the appropriate federal agency charged with the responsibility of enforcing such law." 26 U.S.C. § 6103(i)(3).

Paragraph (k) subsection (6) provides in part that "An internal revenue officer or employee may, in connection with his official duties relating to any audit, collection activity, or civil or criminal tax investigation or any other offense under the internal revenue laws, disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available..." 26 U.S.C. § 6103(k)(6). In the instant case the Department of Labor was contacted by the IRS pursuant to an investigation of Janice Delridge. The IRS requested information concerning Delridge's receipt of Department of Labor funds. This request triggered the Department of Labor investigation which has resulted in the affidavits and documents before the Court.

The request by the IRS to the Department of Labor is the type of request and release of information specifically authorized by 26 U.S.C. § 6103(k)(6). Furthermore, if the IRS suspected that Delridge's receipt of Department of Labor funds was fraudulent, 26 U.S.C. § 6103(i)(3) authorizes it to notify the Department of Labor. All of the evidence before the Court, was obtained in the course of the Department of Labor's investigation and does not in any part consist of information directly from Delridge's tax returns. President's contention that this information should be excluded therefore is totally without merit. Any release of return information by the IRS to the Department of Labor was in conformity with the provisions of Section 6103, and the resulting evidence need not be excluded.

## VI.

Defendant President's contention that her affidavit was obtained in violation of her Fifth Amendment rights against self-incrimination is predicated on the assumption that this is a criminal investigation and criminal action. However, in her motion to dismiss, President admits that

"There are no allegations in the government's complaint which show that 84 C 2222 is anything but a civil pleading." The defendant cannot have it both ways. The Court agrees with the defendant that this complaint is a civil matter, not a criminal one. As a civil matter, any reliance the defendant may place on the violation of her Fifth Amendment rights to exclude her statement is misplaced.

■ The general rule of law is that failure to give *Miranda* warnings does not automatically require exclusion of statements thus obtained. *Dixson v. State*, 30 A.D.2d 626, 290 N.Y.S.2d 682 (1968). A New York court noted, in declining to exclude a statement in a civil case obtained without giving the defendant the warnings required by *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), that "The Fifth Amendment ... reads, so far as here material: 'nor shall be compelled in any *criminal* case to be a witness against himself.' (emphasis supplied). The Sixth Amendment states, in pertinent part: 'In all *criminal* prosecutions the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence.' (emphasis supplied)." *Terpstra v. Niagara Fire Insurance Co.*, 26 N.Y.2d 70, 308 N.Y.S.2d 378 at 381, 256 N.E.2d 536 at 538 (1970). The court reasoned that the basis for exclusion of a confession in a criminal trial is to establish procedural safeguards for the Fifth and Sixth Amendment rights of the accused, *Id.*, 308 N.Y.S.2d at 380–381, 256 N.E.2d at 537–38, while the basis for exclusion of a confession or admission in a civil action is merely the lack of voluntariness or reliability of the statement. *Id.*, 308 N.Y.S.2d at 381, 256 N.E.2d at 538.

The reasoning in *Terpstra* is applicable to the instant case. This is not a criminal prosecution and no Fifth or Sixth Amendment rights are implicated. Hence, President cannot claim that her *Miranda* rights were violated.

■ Even if the use of evidence obtained in violation of *Miranda* were barred in civil cases, the statement submitted in the case at bar would be admissible as it does not appear to have been procured in an unconstitutional fashion. It is well settled that *Miranda* warnings must be given in situations where there is a custodial interrogation. *Michigan v. Mosley*, 423 U.S. 96, 100–01, 96 S.Ct. 321, 324–25, 46 L.Ed.2d 313 (1975); *Miranda v. Arizona*, 384 U.S. 436, 473–74, 86 S.Ct. 1602, 1627–28, 16 L.Ed.2d 694 (1966). However, statements made during a noncustodial interrogation are not viewed with suspicion, thus obviating the need for the recitation of *Miranda* warnings. *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); *United States v. Serlin*, 707 F.2d 953 (7th Cir.1983). This is so unless the interrogation can "... by virtue of some special circumstances, be characterized as one where 'the behavior of ... law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined. *Beckwith*, 425 U.S. at 347–48, 96 S.Ct. at 1616–17 (*quoting Rogers v. Richmond*, 365 U.S. 534, 544, 81 S.Ct. 735, 741, 5 L.Ed.2d 760 (1961)).

■ In the case at bar there was neither a custodial interrogation nor any coercive behavior on the part of the law enforcement agents. The elements of a custodial interrogation requiring that *Miranda* warnings are: 1) probable cause to arrest at the time of the interrogation; 2) subjective intent on the part of the officer to hold the defendant; 3) a subjective belief on the part of the defendant that his freedom was significantly restricted; and, 4) an investigation focused on the defendant at the time of the interrogation. *U.S. v. One (1) 1963 Hatteras Yacht Ann Marie*, 584 F.2d 72, 75 (5th Cir.1978).

■ In the case at bar, President was not under arrest at the time of the interview and, according to the affidavit of Agent Mullins, there was no intent on the part of the agents to hold or arrest President at that time. Moreover, as the interview took place at President's home in midafternoon, it is apparent that President was not taken into custody or otherwise deprived of her freedom in any significant way. Indeed, President makes no claim

that she believed her freedom was in any way impaired. In light of these facts, it is clear that no custodial interrogation existed sufficient to require the recitation of *Miranda* warnings.

It is also apparent that the law enforcement agents did not engage in any behavior whatsoever which was so overbearing as to bring about an involuntary confession. There is no contention by the defendant that her admission was coerced nor is there any evidence in the record which would even slightly impinge the credibility or reliability of President's signed statement. Instead, it appears that when presented with the government's evidence in this case, President freely admitted her wrongful behavior. Under these circumstances, there is no evidence of coercion. President's claim that the statement is inadmissible is therefore without merit.

## VII.

■ President's final contention is that the claims are barred by the six year statute of limitations contained in 28 U.S.C. § 2415. According to President, any claim which arose prior to March 16, 1978, or six years prior to the filing of this suit, is barred. While President's assessment of the statute is correct, she fails to consider the fact that the instant case involves a conspiracy to defraud and that in a conspiracy case, the statute of limitations starts to run on the date of the last overt act alleged to have caused injury. *Bergschneider v. Denver,* 446 F.2d 569 (9th Cir.1971).

■ A civil conspiracy is defined as "... a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or an injury upon another." *Lenard v. Argento,* 699 F.2d 874, 882 (7th Cir.1983). In the case at bar, it is undisputed that President caused fraudulent payments to be issued to Delridge and Lyons, that Delridge and Lyons knew the checks were fraudulent and were affected by President, and that the various defendants nevertheless endorsed and cashed these checks. The government has shown that these were not isolated instances, but rather a continuing series of occurrences. Clearly, the government has proven the existence of a conspiracy, the essential nature of which was known to each defendant. This conspiracy existed long after March 16, 1978. Indeed, the documents before the Court plainly show that wrongful acts were committed at least up until July, 1980, a date well within the limitations period.

■ Even if no conspiracy existed, because there was present deliberate fraudulent concealment, the statute of limitations could not be considered to have begun running until the plaintiff discovered or could have discovered the acts underlying the suit. *Fitzgerald v. Seamans,* 553 F.2d 220, 228 (D.C.Cir.1977). In the instant case, a large portion of President's activities involved covering up her activities so that the fraudulent payments would not be detected. By altering the records so that the names and addresses of the fraudulent payees were not reflected, President intentionally and deceptively prevented the plaintiff from discovering the wrongful activities. Where there has been such fraudulent concealment, equity dictates that the statute of limitations not begin to run until the scheme is discovered or could have been discovered. As this did not occur until September, 1983 when, because of her tax returns, it was discovered that Janice Delridge was not a proper Workers' Compensation claimant, under this rationale, that is the appropriate time for the statute of limitations to be deemed to have begun to run.

## VIII.

In response to the plaintiff's motion for summary judgment, defendant Lyons, like President, raises no issues of material fact which are properly supported. Instead, she baldly asserts: 1) that the plaintiff has failed to show that she fraudulently caused to be issued to her any sum of money by the United States; 2) that the plaintiff has not demonstrated that she violated the Fed-

eral False Claims Act; and 3) that the plaintiff has failed to show that she was unjustly enriched by the amount claimed.

▉ Where, as here, a summary judgment motion is supported by affidavits and other documentation, an adverse party may not rest on his pleadings but must otherwise show that a genuine issue remains for trial. Fed.R.Civ.P. 56(e). In the case at bar, the claims against defendant Lyons are: 1) that she fraudulently received government monies which she refuses to return or account for; 2) that she received payments in violation of the Federal False Claims Act, 31 U.S.C. § 3729 *et seq.;* and 3) that she was unjustly enriched in the amount of $40,448.82. As to the first claim, the plaintiff seeks to have a trust imposed and, additionally, seeks an accounting of the funds received.

▉ Lyons' claim that the plaintiff has failed to show that she fraudulently caused funds to be issued to her is irrelevant. At no time does the government contend that Lyons *caused* the issuance of the funds. As to Lyons, all claims deal with her receipt and use of the monies.

▉ Lyons' contention concerning the Federal False Claims Act is also without merit. The fraudulent submission of checks for payment is within the Federal False Claims Act and establishes a violation thereof. *Scolnick v. United States,* 331 F.2d 598, 599 (1st Cir.1964). In the case at bar, despite her protestations to President asking for the stoppage of the checks, Lyons clearly accepted the checks, presented them, and deposited the proceeds in her bank account. Given these facts, the government is entitled to summary judgment under the Federal False Claims Act.

▉ As to the amount of the monies received, the plaintiff has submitted actual business records reflecting the amounts of the payments made. According to these records, Lyons received $40,448.82 to which she was not entitled. As she submits noth-ing which would indicate that the amounts reflected in the government's records are inaccurate or otherwise unreliable, Lyons cannot contend that the amount plaintiff claims she received is incorrect. Lyons' assertion in this regard therefore also must fall.

### IX.

In her motion, defendant Delridge claims that 26 U.S.C. § 6103 requires that the evidence against her be excluded. For the reasons discussed above in connection with defendant President, it is apparent that Delridge's claim in this regard is without merit. Similarly, Delridge's argument that the statute of limitations bars the plaintiff from bringing certain claims is also in error. Finally, as with Lyons, it is undisputed that Delridge submitted the fraudulently obtained checks for payment. A claim under the Federal False Claims Act has therefore been established and cannot be contested by Delridge by an assertion that the elements of the statute have not been met.

### CONCLUSION

Where, as here, a party responding to a summary judgment motion fails to raise by affidavit or other materials a genuine issue of material fact, the facts presented in the moving parties' materials shall be considered established. *Wang v. Lake Maxinhall Estates, Inc.,* 531 F.2d 832 (7th Cir. 1976). In the instant case, the plaintiff has substantiated each of its claims against President and Lyons with affidavits, canceled checks, altered payment vouchers, and the admissions of both defendants. The defendants do not challenge the facts contained in these materials submitted by the government; rather, the admissibility of certain of the documents is challenged as is the timeliness of the suit given the statute of limitations on some of the claims. Having determined that the defendants' assertions are without merit, the

facts furthered by the plaintiffs are established and are sufficient to establish the allegations contained in the complaint. The plaintiff's motion for summary judgment is therefore granted as to all relevant Counts against defendants President and Lyons and the motions to dismiss or strike filed by defendants President and Delridge are denied.

Under Count I, damages are assessed against defendant Maggielean President in the amount of $585,797.81 plus interest and costs. Under Count II, the Court hereby orders an accounting by defendants President and Lyons with respect to all monies constituting the proceeds from the funds defrauded as well as all monies and real and personal property derived therefrom. In addition, the Court hereby imposes a constructive trust upon all property, including earnings, income, profits, proceeds, benefits, and other things of value identified as resulting from the above misconduct, however held, concealed, or distributed, for the use of plaintiff as beneficiary. As to Count III, judgment is entered under the Federal False Claims Act, 31 U.S.C. § 3729 *et seq.*, against defendants President and Lyons in the amount of double the damages assessed against each plus any statutory forfeitures. Finally, under Count IV, judgment is entered against defendants in the amounts they were unjustly enriched, specifically $355,166.30 against defendant President and $40,448.82 against defendant Lyons, plus interest and costs.

IT IS SO ORDERED.