MARINE BANK, NATIONAL
ASSOCIATION, Plaintiff,

v.

The MEAT COUNTER, INC., an Illinois
corporation, Patrick Falcone and
Joseph Falcone, Defendants.

No. 84 C 8661.

United States District Court,
N.D. Illinois, E.D.

March 10, 1986.

James R. Gannon, Paul V. Esposito, Douglas A. Lindsay and Pamela A. Rons, Lewis, Overbeck & Furman, Chicago, Ill., for plaintiff.

R.S. Maione, Drugas, Malone, Morgan & Hyink, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

In 1982, defendant Joseph Falcone ("Joseph"), a butcher, signed a guaranty which enabled his son Patrick, also a butcher, to obtain financing and equipment from plaintiff Marine Bank ("the Bank") and thus to start his own butcher business. Patrick's business defaulted, and the Bank demanded that Joseph satisfy the debt. This breach of contract lawsuit followed Joseph's refusal to pay. The parties have filed cross motions for summary judgment as to Joseph's liability in Count II. Because we hold for the reasons stated below that a material misrepresentation induced Joseph to sign the guaranty, he is entitled to avoid his obligations under that contract. Accordingly, his motion for summary judgment will be granted and the Bank's will be denied.

The following facts, as established by the affidavits, deposition testimony[1] and other

---

1. The Bank's motion to strike portions of the affidavits of Joseph and Patrick is denied. In ruling on this motion, we have reviewed only those portions of the affidavits which we draw from in the text. Most of the Bank's objections are frivolous. It asserts without explanation that several paragraphs of the affidavits contra- dicted deposition testimony, but we were at a loss to discover the contradictions. In most cases, the affidavits were consistent with deposition testimony. In other cases, the affidavits supplemented the depositions without contradicting them. Thus, we deny the motion to strike. It is so ordered.

documents, are uncontested. Joseph is 63 years old and has been a butcher since 1938. Since 1956 he had been Secretary and Treasurer, as well as a principal shareholder, of International Meat Co., a small, closely held meat cutting business he started with some friends of his. Al LaValle, the President, handles most of the business dealings, such as financing, leasing, etc. Joseph's principal job is to cut meat.

In late 1982 Patrick had cut meat at International for eighteen years when he told Joseph that he wanted to start his own business. In early 1983, while both were at work at International Meat, Patrick approached Joseph and told him that a man from the leasing company was there; that he was having trouble getting financing; and that Joseph would have to "sign for" Patrick in order for Patrick to go into business. Joseph and Patrick then met with Jim Roemer, an agent of the Bank.[2] Before signing anything, Joseph said to Roemer, "I don't want to be responsible for anything." Roemer replied, "I'll assure you you're not going to be responsible for anything. In case Pat can't make it, we'll just take the fixtures back." Joseph repeated his concern and received a second assurance. Joseph then signed the guaranty without reading its contents. The whole transaction happened very quickly. He says he had "no chance to read it," although it appears that Joseph simply did not ask or try to read it. In any event, he was never given a copy of the papers he signed. The document was one page long, in fine print throughout and contained this language in the fourth paragraph:

> This Guarantee shall be construed as an absolute and unconditional guarantee of payment, without regard to the validity, regularity, or enforceability of any obligation or purported obligation of Obligor. MBL [the Bank] shall have its remedy under this Guarantee without being obliged to resort first to any security or to any other remedy or remedies to enforce payment or collection of the obli-

gations hereby guaranteed, and may pursue all or any of its remedies at one or at different times.

When Patrick defaulted, the Bank pressed Joseph to pay for the debt in accordance with the terms of the guaranty. Joseph refused and this lawsuit was filed. Among other issues raised in the cross-motions for summary judgment, Joseph asserts as an affirmative defense the fact that he relied on Roemer's material misrepresentation concerning the scope of his duty in the guaranty. Finding this defense dispositive, we do not reach these other issues.

The Court can grant a motion for summary judgment only if the moving party can show "there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). We must view the evidence, as well as reasonable inferences created by the evidence, in the light most favorable to the party opposing the motion. *See, e.g., Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir.1984). If the moving party cannot meet its "strict burden," its motion will fail, even if the other party mounts no opposition. *Id.* But when the moving party does carry its burden, the burden shifts to the other party to create a genuine issue of material fact; that party cannot merely conjure up bare pleadings or unsubstantiated assertions in meeting this burden. Fed.R.Civ.P. 56(e); *Big O*, 741 F.2d at 163.

At the outset, we must examine whether there is a "genuine issue" as to the facts detailed above, which (as we will see) are material to Joseph's first affirmative defense of misrepresentation. We hold that no genuine issue exists as to those facts. Most significantly, there is no genuine issue that Roemer made the misrepresentation Falcone says he made. That statement, as well as other facts recited above, is borne out by the Falcones' affidavits and depositions. The Bank has presented no evidence to contradict these facts, not even

---

**2.** Joseph did not know then that Roemer was with the Bank. He thought he was an agent for

U.S. Refrigeration, a company he had previously dealt with and which he trusted.

an affidavit from Roemer (although it does make a futile attempt to find some minor inconsistencies between the affidavits and depositions, see n. 1 above). As such, these uncontroverted facts will be accepted as true:

In spite of the usual rule that all doubts are resolved against the moving party, there is one inference to which he is entitled by virtue of the last sentence in Rule 56(e). If the movant presents credible evidence that would entitle him to a directed verdict if not controverted at trial, this evidence must be accepted as true on a motion for summary judgment when the party opposing the motion does not offer counter-affidavits or other evidentiary material supporting his contention that an issue of fact remains, or does not show a good reason, in accordance with Rule 56(e), why he is unable to present facts justifying his opposition to the motion.

10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure*, § 2727 (1983) at 133–137; *see also Wang v. Lake Maxinhall Estates*, 531 F.2d 832, 835 n. 10 (7th Cir.1976).

In assessing the legal import of these uncontroverted facts, the Court must view them through the lens of Wisconsin law. Since this is a diversity case, we apply the choice of law rules of the forum state, Illinois. *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Illinois honors the parties' intent about governing law, if that intent is express. *Hofeld v. Nationwide Life Ins. Co.*, 59 Ill.2d 522, 322 N.E.2d 454 (1975). The contract in dispute here states that Wisconsin law governs cases arising from it. The parties agree that Wisconsin law governs here.

In *First National Bank and Trust Co. of Racine v. Notte*, 97 Wis.2d 207, 293 N.W.2d 530 (1980), the Supreme Court of Wisconsin held that the contract defense of misrepresentation should be judged by modern principles as expressed in the Second Restatement of Contracts (1981).[3] 97 Wis.2d at 222, 293 N.W.2d at 538. According to the Restatement and *Notte*, two types of misrepresentation[4]—"fraudulent" or "material"—may make a contract voidable. Restatement, § 164(1) (1981). Fraudulent misrepresentation requires "scienter," that is intent by the person making the misrepresentation to mislead or deceive. *See* § 162(1) and comment b. Since we have no direct evidence as to Roemer's intent, we do not go further with this strand. However, even innocent misrepresentations may suffice as a contract defense if they are material. *Notte*, 97 Wis.2d at 222–23, 293 N.W.2d at 538. "A misrepresentation is material if it is likely to induce a reasonable person to manifest his assent, or if the maker knows that it is likely that the recipient will be induced to manifest his assent by the misrepresentation." *Id.;* Restatement § 162(2). The materiality requirement is objective and is determined from the viewpoint of the *speaker;* the inquiry focusses on whether a reasonable person would be likely to assent to the contract on the basis of the misrepresentation. *Notte*, 97 Wis.2d at 223, 293 N.W.2d at 538; Rest. § 162(2), comment c. In other words, does the misrepresentation relate to a term or condition the prudent person would find important? Finally, for the misrepresentation defense to succeed, the recipient must rely, and justifiably so, on the misrepresentation; that is, it must "induce" him or her to assent. Restatement § 164(1). In contrast to the materiality requirement, this "justifiable reliance" factor focusses on the hearer of the misrepresentation.

From the foregoing we distill the following elements for the contract defense of material misrepresentation:

---

**3.** The Second Restatement was then in tentative draft and was numbered differently than now. We use the current section numbers throughout this opinion. We also refer to the Second Restatement simply as "the Restatement."

**4.** Section 159 of the Restatement defines a "misrepresentation" as an "assertion that is not in accord with the facts."

(1) There must be a misrepresentation, which

(2) must be material and

(3) induce the other party to assent;

(4) the other party must justifiably rely on the misrepresentation.

Joseph has satisfied these elements in this case.

a. *Misrepresentation.* It is clear, and the Bank does not deny, that Roemer's statement is a misrepresentation as defined in *Notte* and § 159 of the Restatement. He said that the contract would not extend beyond the equipment, when it plainly said otherwise. This is not an "opinion," which usually does not justify reliance. *See generally* Restatement, §§ 168–170.

b. *Materiality.* Nor does the Bank deny that the misrepresentation was material. Plainly, a "reasonable person" would likely have been induced to assent to the contract had he been told that if Pat would default, the creditor would merely seize the equipment. This type of misrepresentation went to the heart of Joseph's obligation, and thus is certainly "material" to his assent. In light of this holding, we need not rule on the applicability of the alternative definition of "material." [5]

c. *Actual Inducement/Reliance.* The Bank does vigorously argue this issue, but unpersuasively. We think the record is abundantly clear, and no genuine issue exists, that Roemer's misrepresentation induced Joseph to sign the guaranty. Joseph asserts he relied on it, and both he and Patrick testified that Joseph asked Roemer about his obligations, and secured the misrepresentation, twice before signing. The misrepresentation clearly influenced Joseph's decision. The Bank points to no contradictory evidence. Instead, it ignores the above evidence and zeroes in on Jo-

seph's additional responses to leading questions in his deposition that went as follows:

Q. So if I'm correct, and correct me if my understanding is wrong, you signed this document because Pat needed the money?

A. Right.

Q. All right. And you didn't bother to read it?

A. Right.

Q. Because you knew that Pat wouldn't get the deal if you didn't sign the guarantee?

A. Right, that's true.

Construing this testimony in a light favorable to the Bank, we may assume that Joseph's desire to help his son no doubt was an additional inducement to sign the contract. But the Bank improperly ignores the other evidence and argues that Joseph's fatherly feelings were his *sole* inducement to sign. Under the Restatement and Wisconsin law, a misrepresentation can make a contract voidable even if it was not the sole inducement to signing the contract. *See* Restatement § 167 (misrepresentation "induces" assent "if it substantially contributes to [the] decision to manifest ... assent"); *cf. First National Bank in Oshkosh v. Scieszinski,* 25 Wis.2d 569, 573, 131 N.W.2d 308, 311 (1964). Comment a. to Section 167 elaborates that the assenting party's reliance on the misrepresentation need not have been the only or "even the predominant factor" in inducing his assent; indeed, it is not even necessary to show "but for" reliance on the assertion. "It is enough that the manifestation *substantially contributed* to his decision to make the contract. It is, therefore, immaterial that he may also have been influenced by other considerations." *Id.* (emphasis added). Thus, the fact that Joseph was strongly motivated to help his son is "immaterial." It is clear from the uncontroverted evi-

---

**5.** As noted above, even if a misrepresentation would not induce the abstract reasonable person to assent, it is nonetheless material "if the *maker knows* that it is likely that the *recipient* will be induced to manifest his assent." Restatement § 162(2). We would not be surprised if Roemer knew about the father-son relation-

ship and thus knew that it would be easy to induce Joseph's assent. However, since Roemer's knowledge is not clear from the record before us, and since his misrepresentation was clearly material under the objective inquiry, we need not tread further down this alternate avenue of materiality.

dence in the record that Roemer's misrepresentation "substantially contributed" to Joseph's decision to sign the guaranty. Accordingly, we hold that the "inducement" element of the defense is satisfied.

d. *Justifiable Reliance.* The Bank argues that Joseph did not "justifiably rely" on the misrepresentation because he did not read the guaranty, which contradicted the misrepresentation in fine print in the fourth paragraph. This argument misunderstands the narrow, modern definition of "justifiable reliance." *Notte,* 97 Wis.2d at 224, 293 N.W.2d at 539, adopts the Second Restatement's definition, which reads at § 172:

> A recipient's fault is not knowing or discovering the facts before making the contract does not make his reliance unjustified unless it amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing.

As comment a. makes clear, fault makes reliance unjustified "only in extreme cases," involving failure to act in good faith and under reasonable standards of fair dealing. While the terms "good faith and reasonable standards of fair dealing" are not well-defined, it is clear that they encompass a wide range of "fault."[6] Where the recipient knows the statement is false or could have discovered it falsity by a "cursory examination," his reliance is "unjustified"; but a mere failure to investigate is not "unjustified," even where that failure was unreasonable. *See* § 172 comment b. The question then is whether Joseph's fault was "gross" to the point of being reckless or merely "unreasonable." We do not think a "cursory" examination of the contract would have revealed the misrepresentation, for the relevant clauses appear in the fourth paragraph of a contract which is entirely in fine print, and are written in "legalese." *See* p. 1030 above. Under the circumstances, Joseph could not have discovered the misrepresentation through a "cursory" reading. This conclusion is bolstered by Illustrations 1 and 3 to Section 172, which contain fact patterns similar to the one in this case, yet state that reliance in each case was unreasonable but not "unjustified."[7] While normally a question of this nature would be left for the jury, on the basis of the entire record[8] and the definitions in § 172, we think no reasonable jury could conclude that Joseph did not act in good faith and in accordance with reasonable standards of fair dealing. Thus, we hold that Joseph has satisfied element four of his defense.[9]

6. The "fault" issue is central to an inquiry not relevant here. If the assenting party is *not* at fault, and he or she relies on a misrepresentation as to essential contract term, his apparent manifestation of assent is invalid and the contract void. *See* Restatement § 163 & Comments b & c. However, where there is fault, as we assume there was here, the manifestation of assent is valid, but the contract may nevertheless be *voidable. See* § 163, Comment c; § 7 (defining "voidable" contract); § 164.

7. For example, Illustration 3 reads:

> 3. A, seeking to induce B to make a contract to buy furniture for B's house, hands B a printed order form and tells B that the total price for the furniture is $550 and that this is stated in the form. A knows that in the form additional furniture is described and that the total price stated is $1,050. B is induced by A's statement to sign the form without reading it, and A accepts B's offer. B's reliance is justified since his fault does not amount to a failure to act in good faith and in accordance with reasonable standards of fair dealing.

The contract is voidable by B. In the alternative he may have the writing reformed.

8. Besides the facts relating to the misrepresentation and the fine print, other facts bolster the conclusion that Joseph was at worst careless. He had believed that Roemer was from an agency he had dealt with before and trusted. *See* n. 2 above. His son had told him Roemer seemed honest, and one might expect he would know what was in the form. Finally, while Joseph held offices for the corporation, he did not primarily handle its business dealings and was surely no financial sophisticate. Thus, while we assume for purposes of summary judgment that Joseph was negligent in not reading the form, the facts in total cannot reasonably support a conclusion that he was so remiss that he acted in "bad faith" and contrary to "reasonable standards of fair dealing."

9. From our discussion in this section and others, it is clear that the Bank's reliance on *Creasey Corp. v. Dunning,* 182 Wis. 388, 196 N.W. 775 (1924), is to no avail. In *Creasey,* the court held that there was no misrepresentation as a factual

## Conclusion

We hold that no genuine issues of fact exist that Joseph has satisfied the four elements of his affirmative defense of misrepresentation. Thus, the contract is voidable. As such, Joseph is entitled to recission.[10] *See Notte*, 97 Wis.2d at 225, 293 N.W.2d at 539. "When recission is sought each party is to return to the other such benefits as have been received from the other." *Id.* Since the parties have not discussed whether either has anything to "return" to the other, we assume they have not. Accordingly, we will grant Joseph's motion for summary judgment and deny the Bank's. Since the other defendants were dismissed with leave to reinstate pending resolution of related bankruptcy proceedings, nothing remains to be resolved in this case, and a final judgment order will be entered. It is so ordered.

matter as to the content of the contract. Here there was such a misrepresentation. To the extent *Creasey* contains some *dictum* that a misrepresentation is irrelevant if the party could have read the contract before signing, 182 Wis. at 396, 196 N.W. at 778, it must be considered a relic of the *laissez-faire* past when *caveat emptor* ruled supreme, for *Notte* and the Second Statement plainly provide otherwise.

10. The Bank raises no argument that Joseph has somehow waived his "power of avoidance," Restatement § 7, either through "affirmance," *see id.* § 380(2) or "delay." *Id.* at § 381(2). Accordingly, we do not address these issues and conclude that Joseph may exercise his power of avoidance through recission.