MARINE BANK, NATIONAL ASSOCIA-
TION, Plaintiff-Appellant,

v.

The MEAT COUNTER, INC., and
Patrick Falcone, Defendants,

Joseph Falcone, Defendant-Appellee.

No. 86–1918.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 15, 1987.

Decided Aug. 26, 1987.

R.S. Maione, Chicago, Ill., for defendants
and defendant-appellee.

Paul V. Esposito, Lewis, Overbeck &
Furman, Chicago, Ill., for plaintiff-appel-
lant.

Before WOOD and FLAUM, Circuit
Judges, and GRANT, Senior District
Judge.[*]

GRANT, Senior District Judge.

This appeal contests the district court's
grant of summary judgment in a diversity

---

[*] Honorable Robert A. Grant, Senior District
Judge for the Northern District of Indiana, is
sitting by designation.

suit brought by the appellant, Marine Bank, to recover sums allegedly due under an equipment lease. Because we conclude that genuine issues of material fact remain, we reverse the judgment of the district court and remand the case for further proceedings.

## I

Joseph Falcone has been a butcher since 1938, and since 1956, the principal shareholder of International Meat Co., a closely-held meat cutting business he established with associates. Joseph Falcone cuts meat, while Al LaValle, the company President, conducts business matters such as financing and leasing. The elder Falcone had employed his son, Patrick Falcone, as a meat cutter for 18 years when, in 1982, Patrick informed his father that he desired his own business. In early 1983, after he had invested some money in the venture, Patrick asked his father to "sign for" his lease of refrigeration and other equipment. In their meeting with Jim Roemer, an agent of Marinebanc Leasing Company ("MBL") (Marine Bank is the assignee of MBL's rights under the lease), Joseph Falcone expressed that he did not want to be responsible for a default. The Falcones claim that Roemer replied, "I'll assure you you're not going to be responsible for anything. In case Pat can't make it, we'll just take the fixtures back." Without reading the documents, Joseph signed the guaranty, and Patrick acquired the equipment necessary to establish his new business, The Meat Counter, Inc.

The guaranty covers:

the prompt and unconditional payment of any and every obligation or liability of Obligor [Meat Counter] to MBL, its successors or assigns, whether or not represented by leases, conditional sales contracts, notes, dealer agreements or other writings, whether now existing or hereafter incurred, whether originally contracted with MBL or with another and assigned or transferred to MBL or otherwise acquired by MBL, whether contracted by Obligor alone or jointly with others, and whether absolute or contingent, secured or unsecured, matured or unmatured, including but not limited to any and all sums, late charges, disbursements, legal fees, and any deficiency upon enforcement of collateral deposited or otherwise, if any, in connection with all such obligations.

\* \* \* \* \* \*

This guarantee shall be construed as an absolute and unconditional guarantee of payment, without regard to the validity, regularity, or enforceability of any obligation or purported obligation of Obligor. MBL [the Bank] shall have its remedy under this Guarantee without being obliged to resort first to any security or to any other remedy or remedies to enforce payment or collection of the obligations hereby guaranteed, and may pursue all or any of its remedies at one or at different times.

Patrick defaulted, and Marine Bank pressed Joseph for payment. Joseph refused to pay, and Marine Bank sought relief in the form of a two-count complaint. Count 1 sought sums due from Meat Counter under the equipment lease, and Count 2 sought recovery from Patrick and Joseph Falcone under personal guaranties signed by each. Meat Counter and Patrick Falcone filed for bankruptcy, and thus, were dismissed pending resolution of those proceedings. Joseph Falcone remained to defend this suit, which seeks $51,576.36, plus interest, attorneys' fees and expenses.

Falcone conceded that he executed a personal guaranty, and that demand was made upon him for payment, yet, he denied he owes anything under the guaranty. Falcone argued that he was induced to sign the guaranty by a misrepresentation which led him to believe that if Meat Counter defaulted on the lease, he would not be personally liable and MBL would merely sell the equipment to recover all sums due.

Marine Bank moved for summary judgment as to liability and Falcone filed a cross-motion for summary judgment. On March 10, 1986, the district court granted Falcone's motion for summary judgment and denied Marine Bank's motion, 635 F.Supp. 1029. The court ruled there could

be no question that Roemer misrepresented the facts regarding the guaranty, that the misrepresentation was material, and that it induced Falcone to sign in justifiable reliance on the statement. The court concluded that Falcone had persuasively stated an affirmative defense and, therefore, no genuine issue of material fact remained for trial.

Four days later, on March 14, 1986, Marine Bank filed a motion under Fed.R.Civ.P. 59(e) requesting the court to "reconsider and vacate" the judgment. Marine Bank included in its motion the deposition and affidavit of Roemer which, in substance, denies ever making the representation as alleged by Falcone.[1] Marine Bank argued that Rule 59(e) permits the court to amend or alter the judgment in light of this "newly discovered evidence." Falcone argued that the Roemer affidavit did not amount to newly discovered evidence because it had been available all along. (Judge Aspen agreed.) In fact, the affidavit was negligently left out of the summary judgment briefs by counsel for Marine Bank. Consequently, in its Rule 59(e) motion to reconsider the judgment, Marine Bank was compelled to request relief in the language of Fed.R.Civ.P. 60(b)(1) ("excusable" neglect), and Fed.R.Civ.P. 60(b)(6) ("other reason justifying relief"). But the court decided that none of the avenues of relief was available, and therefore, on April 30, 1986, it denied the motion.

■ On May 30, 1986, Marine Bank appealed from the summary judgment order of March 10, 1986. Although the appeal was filed more than 30 days after the date of entry of the judgment, see Fed.R.App.P. 4(a)(1), and though we are committed to exercising vigilance in strictly enforcing the 30–day filing rule, see, e.g., Reinsurance Company of America, Inc. v. Administratia Asigurarilor de Stat, 808 F.2d 1249 (7th Cir.1987), Marine Bank has brought a timely appeal according to the rationale of our decision in Charles v. Daley, 799 F.2d 343 (7th Cir.1986). A motion brought under Rule 59 suspends the finality of a judgment until the motion is decided; the clock stands at 30 days until then. Fed.R.App.P. 4(a)(4). Despite Falcone's assertion that Marine Bank's motion was not brought under Rule 59—because it actually sought relief from attorney neglect—Charles v. Daley adopted for this Circuit the rule that, where there is a dispute about the form of a motion, "all substantive motions served within 10 days of the entry of a judgment will be treated as based on Rule 59, and therefore as tolling the time for appeal." 799 F.2d at 347. Marine Bank brought its motion only four days after the court entered summary judgment, and it was a "substantive" motion, requesting the court to reconsider its judgment in light of an affidavit directed at the heart of the case. The motion therefore tolled the time in which Marine Bank had to appeal. Because the appeal was filed within 30 days of the court's denial of the motion to reconsider, we deny Falcone's motion to dismiss the notice of appeal as untimely filed.

## II

The district court properly granted summary judgment to Falcone if there was no genuine issue as to any material fact and Falcone was entitled to judgment "as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a summary judgment motion, the district court may not weigh the evidence and resolve issues of fact; disputed facts must be left for resolution in a trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Moreover, all reasonable inferences from the evidence must be drawn in favor of the non-movant. DeValk Lincoln Mercury, Inc. v. Ford Motor Co., 811 F.2d 326, 329 (7th Cir.1987); Bartman v. Allis-Chalmers Corp., 799 F.2d 311, 312 (7th Cir.

---

1. Roemer stated:
   At no time did I ever say that Mr. Joseph Falcone would not have to pay personally if the business of Mr. Patrick Falcone failed and the selling of assets did not pay off the obligation to Marinebanc Leasing. For either party to claim anything to the contrary is, first of all, not true and secondly, shows a naive approach to business.

1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987).

■ Wisconsin law governs the contract in this case, and Wisconsin applies the position taken in the Restatement (Second) of Contracts in determining whether a misrepresentation theory of defense voids a contract. *See First National Bank and Trust Co. v. Notte,* 97 Wis.2d 207, 293 N.W.2d 530, 538 (1980). Falcone seeks rescission as relief from his obligations under the guaranty. Under the applicable law: "If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient." Rest. (Second) of Contracts § 164(1). The district court found that there was a material misrepresentation. Therefore, we focus on the alleged material misrepresentation, rather than on questions of fraudulent misrepresentation.

A misrepresentation is an assertion that does not accord with facts as they exist ... [and] is material if it is likely to induce a reasonable person to manifest his assent, or if the maker knows that it is likely that the recipient will be induced to manifest his assent by the misrepresentation.

*Notte,* 293 N.W.2d at 538. One cannot quarrel with the fact that a "misrepresentation" occurred, at least for purposes of deciding the summary judgment motions. Falcone claimed Roemer said that the contract would not extend beyond the equipment, although the contract plainly stated otherwise. Marine Bank failed to dispute in a timely manner whether the statement occurred; Roemer's denial was not yet available to the court. Thus, for purposes of the motion, Roemer did make the statement, and it was a misrepresentation because it did not accord with facts as they existed.

■ The misrepresentation was "material" if it was "likely to induce a *reasonable person* to manifest his assent," or if *"the maker* knows that it is likely that the recipient will be induced to manifest his assent by the misrepresentation." *Notte,* 293

N.W.2d at 538 (emphasis supplied). The district court found that

a 'reasonable person' would likely have been induced to assent to the contract had he been told that if Pat would default, the creditor would merely seize the equipment. This type of misrepresentation went to the heart of Joseph's obligation, and thus is certainly 'material' to his assent.

635 F.Supp. at 1032. The court recognized that it would be impossible to ascertain Roemer's knowledge of what would likely induce Falcone, and therefore, the court did not rest its finding on that thread. *Id.* at 1032 n. 5. Although we note that the "reasonable person" language of the materiality standard suggests a jury-like determination, because of counsel neglect Marine Bank never really contested the materiality issue at the summary judgment stage. It was not until the filing of the motion for reconsideration that the Roemer affidavit surfaced. Because of the lack of an effort to contest this element of proof, no factual questions remained for the court or jury to decide on the issue of "material" misrepresentation.

Marine Bank did make an extensive argument on the inducement and reliance issues. The Bank argues that considerable evidence was before the court indicating that Falcone signed the guaranty because he wanted to help his son, and that in ruling that the alleged misrepresentation "substantially contributed" to Falcone's signing the guaranty, the court necessarily and improperly weighed and resolved conflicting evidence. In the Bank's view, a jury could have found that the misrepresentation played little or no part in the execution of the guaranty.

■ Under the Restatement, "[a] misrepresentation induces a party's manifestation of assent if it substantially contributes to his decision to manifest his assent." Rest. (Second) of Contracts § 167. The district court considered the record to be "abundantly clear, and no genuine issue exists, that Roemer's misrepresentation induced Joseph to sign the guaranty." 635 F.Supp. at 1032.

Although the Roemer affidavit was not available to the court at the time, Marine Bank offered the following responses made by Joseph Falcone in deposition:

Q. So if I'm correct, and correct me if my understanding is wrong, you signed this document because Pat needed the money?

A. Right.

Q. All right. And you didn't bother to read it?

A. Right.

A. Because you knew that Pat wouldn't get the deal if you didn't sign the guarantee?

A. Right, that's true.

Moreover, Patrick Falcone had stated:

I was all upset about it because I didn't want to depend on anybody. I like to do my own thing. I have had two homes and I did my own thing, and I wanted to do my own thing on the business. And I went in the back. And I was all disappointed about it that I couldn't get all the money I needed. And I had already signed the loan for the building already. And I went back to talk to my dad, and talked for a few minutes back there. And I said, "What do you think? If you don't want to help me, just say so and I will forget about the whole deal, and I will lose the money on deposit."

He didn't want me to lose the money on the deposit. So he signed for it.

The court assessed this testimony in the light most favorable to the Bank, but nonetheless, ruled that the misrepresentation actually induced Falcone to sign the guaranty. We cannot agree that, on the basis of the evidence before Judge Aspen at the time he considered the motions for summary judgment, the issue of inducement was clear enough to decide without having to weigh and resolve the evidence.

As the district court correctly stated, "a misrepresentation can make a contract voidable even if it was not the sole inducement to signing the contract." 635 F.Supp. at 1032. It is enough if the misrepresentation "substantially contributes" to the decision to enter the contract. "It is, therefore, immaterial that he may also have been influenced by other consideration." Rest. (Second) of Contracts § 167, comment a. But we disagree with the district court's conclusion for the simple reason that, given the Bank's evidence of alternative motivation, a reasonable inference is that Joseph Falcone signed the guaranty for the purpose of assisting his son, without regard for what Roemer may have misrepresented about the effect of the guaranty. We think a *jury* could have chosen not to give much weight to Joseph Falcone's self-serving statement. We do not necessarily have "conflicting" evidence. However, given the evidence of an alternative inducement, a jury would not be required to conclude that the alleged misrepresentation substantially contributed to the decision to sign the guaranty.

Likewise, we think the court erred in deciding that there could be no doubting that Joseph Falcone "justifiably" relied on the alleged misrepresentation. Under the pertinent standard:

A recipient's fault in not knowing or discovering the facts before making the contract does not make his reliance unjustified unless it amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing.

Rest. (Second) of Contracts § 172.

Falcone admitted that he never read the document he signed. The district court posed for itself the following:

The question then is whether Joseph's fault was 'gross' to the point of being reckless or merely 'unreasonable.' We do not think a 'cursory' examination of the contract would have revealed the misrepresentation, for the relevant clauses appear in the fourth paragraph of a contract which is entirely in fine print, and are written in 'legalese.' ... Under the circumstances, Joseph could not have discovered the misrepresentation through a 'cursory' reading.

635 F.Supp. at 1033. While the court conceded that this type of question is normally left for the jury, it found that no reasonable jury could have concluded that Joseph did not act in good faith and in accordance

with reasonable standards of fair dealing. We cannot agree.

The court is correct in stating that it is the "extreme" case where the recipient has failed to act in good faith and in accordance with reasonable standards of fair dealing. *See* Rest. (Second) of Contracts § 172, comment a. Yet, the determination of "good faith and fair dealing" must be made in light of the recipient's

> peculiar qualities and characteristics, including his credulity and gullibility, and the circumstances of the particular case.... If the recipient knows that the assertion is false or should have discovered its falsity by making a cursory examination, his reliance is clearly not justified and he is not entitled to relief.... He is expected to use his senses and not rely blindly on the maker's assertion. On the other hand, he is not barred by the mere failure to investigate the truth of a misrepresentation, even where it might be reasonable to do so.

Rest. (Second) of Contracts § 172, comment b. In concluding that Falcone "justifiably" relied, the district court made these determinations for itself. We think a jury could have decided differently.

To start, a jury could have found that Joseph Falcone was sophisticated enough in business dealings to know that his signature on a document must mean *something*, that the relevant contract language was not obscure "legalese," and that he could have ascertained the actual import of his signature with some examination of the document. Falcone insists that even if he had read the document, he could not have discerned its implications. He characterizes himself as an uninquiring butcher with only two years of high school education. But that, if it is to be accepted as fact, falls far short of establishing, *per se*, Falcone's inability to understand the guaranty. On the contrary, he was aware of legal matters—an attorney reviewed his mortgage documents, for example—and he had run a business for more than 30 years. Moreover, as to the surrounding circumstances, there was no evidence that Falcone was asked not to read the guaranty or consult an attorney before signing, and there existed no prior business relationship between Roemer and Falcone, amounting to a relationship of trust which might excuse or justify Falcone's casual signing of the guaranty without examining the document.

Secondly, we find no support for the view that Falcone need only make a "cursory" examination of the document. Comment b of the Restatement (Second) § 172 advises that if a recipient knows that the assertion is false or should have discovered its falsity by making a "cursory examination," then reliance is clearly not justified. The comment, however, does not define what reliance *is justified;* the result of a cursory examination does not fix the boundaries for the phrase "justifiable reliance." As Falcone notes, "cursory" is defined in the dictionary as "rapid and superficial; hasty." Such a definition reveals the error of a rule that might require only superficial reading of documents. Not only may further examination be consistent with standards of fair dealing in some circumstances, but a standard of good faith that does not require the reading of documents would appear to be a very costly one. *See, e.g., Amoco Oil Company v. Ashcraft,* 791 F.2d 519, 522 (7th Cir.1986).

We need not resort to the parlance of Wisconsin case law to characterize Falcone's assent as "negligent reliance," and thus not "justifiable." *See, e.g., Ritchie v. Clappier,* 109 Wis.2d 399, 326 N.W.2d 131, 134 (Wis.App.1982). Rather, we simply conclude that the district court should not have closed the book on the many factors which determine justifiable reliance. Consequently, for the reasons discussed above it was error for the district court to hold that no genuine issues of fact exist on the question of whether Joseph Falcone had satisfied the elements of the affirmative defense of misrepresentation.

Because we are remanding this case for further proceedings, we also note that the parol evidence rule appears to be alive and well in Wisconsin:

> When the parties to a contract embody their agreement in writing and intend the writing to be the final expression of their

agreement, the terms of the writing may not be varied or contradicted by evidence of any prior written or oral agreement in the absence of fraud, duress or mutual mistake.

*Federal Deposit Ins. Corp. v. First Mortgage Investors*, 76 Wis.2d 151, 156, 250 N.W.2d 362, 365 (1977). In its motion for summary judgment, Marine Bank argued that no evidence of any prior oral agreement could be admitted to vary the clear language of the guaranty signed by Falcone. The district court denied this motion, but without explanation. It appears that absent a showing of fraud, the Bank's motion could have been granted. Ultimately, however, the parol evidence rule only applies if the writing is intended by both parties to be the final and complete expression of their agreement. *Kramer v. Alpine Valley Resort, Inc.*, 108 Wis.2d 417, 321 N.W.2d 293, 297 (1982). That is a question of fact. The remand affords the district court the opportunity to explore the merits of the motion.

Rule 36 shall not apply.

REVERSED AND REMANDED.