**In re Arnold & Margaret MAY, Debtors.**

**James A. CHATZ, Trustee, Plaintiff,**

v.

**The HAWTHORN CORPORATION, and John E. Cuneo, Jr., Defendants.**

**Bankruptcy No. 82 B 12354. Adv. No. 88 A 006.**

United States Bankruptcy Court, N.D. Illinois, E.D.

· June 28, 1990.

John H. Ward of Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., Chicago, Ill., for plaintiff.

Daniel Cummings of Rothschild, Barry & Myers, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

JOHN D. SCHWARTZ, Chief Judge.

This matter comes before the court on the motion of James A. Chatz, Trustee of the Arnold May and Margaret M. May (collectively "Debtors") estate, for summary judgment against the Hawthorn Corporation and John E. Cuneo (collectively "Cuneo"). The Trustee filed a three-count complaint against Cuneo and now moves for summary judgment on Count I, an action in trespass. For the reasons set forth herein, the court, after considering the pleadings, exhibits and memoranda filed, does hereby deny the motion for summary judgment.

## I. JURISDICTION AND PROCEDURE

The court has jurisdiction to entertain this motion pursuant to 28 U.S.C. § 1334 and General Orders of the United States District Court for the Northern District of Illinois. The motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## II. STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides the statutory criteria for summary judgment which is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) provides in pertinent part:

> [T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c).

The moving party has the burden of showing that no genuine issue of material fact is in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The policy behind granting a motion for summary judgment is avoiding trials when there is no genuine issue of material fact in dispute. *Wainwright Bank & Trust Co. v. Railroadmens Federal Sav. & Loan Ass'n of Indianapolis*, 806 F.2d 146, 149 (7th Cir.1986). When the record, taken as a whole, does not lead a rational trier of fact to find for the nonmoving party there

is no genuine. issue for trial. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

The party opposing a motion which is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law may not rest upon the mere allegations or denials in its pleadings. Rather, the non-moving party must show in its response that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552; *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. All reasonable inferences which are drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Davis v. City of Chicago*, 841 F.2d 186, 189 (7th Cir.1988); *Marine Bank, National Association v. Meat Counter, Inc.*, 826 F.2d 1577, 1579 (7th Cir.1987). Furthermore, the disputed fact or facts must be determinative of the outcome under applicable law for a factual dispute to be precluded by summary judgment. *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.1983) (en banc), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983).

## III. BACKGROUND

In September of 1977, Arnold May ("May") agreed to sell to a Continental Bank land trust, of which defendant John E. Cuneo was the beneficiary, part of the property commonly known as the Hillview Farm and located on North Solon Road in or near Richmond, Illinois. Cuneo planned to use this part of the Hillview Farm to house and train his collection of exotic animals which included lions, tigers and elephants. In an addendum to the "Real Estate Sale Contract," May provided Cuneo with the right to discharge waste water and manure (hereinafter known as "Zoo Do") onto May's land by way of a pipeline. The addendum provided as follows:

> Seller [May] owns or controls the land surrounding the Premises on the south, west and north of the Premises. For so long as Seller (or Seller's spouse, any relative of either of them, or any agent or trustee of any of the foregoing) shall own and operate any such adjoining land:

(a) waste water from the Premises shall be allowed to run into the existing lagoon lying to the south of the southerly boundary of the Premises; (b) all pipes or tiles necessary or appropriate to permit the running off of such water may be installed upon or below grade on such adjoining land; and (c) persons working upon or on behalf of said adjoining land daily (if possible, but not less frequently than once in every two days) shall pick up all manure collected upon the animal facilities to be constructed upon the Premises, shall remove such manure from the Premises and shall dispose of same at no cost to Purchaser [Cuneo] or to persons operating said animal facilities from time to time.

(Real Estate Sale Contract, dated September 21, 1977, ¶ 13, p. 3, hereinafter known as "Addendum to the Sale Contract"). Neither the Sale Contract nor any part of the Addendum to the Sale Contract was ever recorded, nor was their any reference to the permission given to the purchaser (Cuneo) to deposit the Zoo Do on the Debtors' property made a part of the deed.

Cuneo alleges that in order to induce Cuneo to enter into the transaction, May's company, Arnold N. May Builders, Inc., agreed to construct an animal barn and training facility for the housing and training of the wild animals. It appears that May's company also installed the pipes and drains that connected the Cuneo animal facility with the lagoons and holding pits located on May's part of the Hillview Farm. The Debtors used the pits and lagoons in a waste reception facility maintained on their property for the production of fertilizer.

On September 16, 1982, the Debtors filed for protection under Chapter 11 of the Bankruptcy Code. (11 U.S.C. § 101 *et seq.* All reference sections are to the Bankruptcy Code). The Trustee was appointed on March 30, 1987. On July 7, 1987, the Trustee recommended conversion of the case to one under Chapter 7 and the waste disposal operations on the Mays' part of Hillview Farm ceased.

In late 1987 or early 1988, the Trustee alleges that the McHenry County Depart-

ment of Health, the State's Attorney of McHenry County, the Illinois Environmental Protection Agency and the Attorney General required the Trustee to clean out the holding pits on the Hillview Farm. The Trustee caused the pits to be cleaned at a cost to the estate of approximately $100,-000.00. In May or June of 1988, after having cleaned the pits as required, waste reappeared. It was at this point that the Trustee alleges he discovered the pipeline that connected the Cuneo property to the Debtor's property.[1] Between June and October of 1988, the Trustee expended another $17,145.00 to clean the pits and permanently plug the Cuneo pipeline.

On January 5, 1989, the Trustee filed a three-count complaint against Cuneo on the grounds of trespass (Count I), negligence (Count II) and contract (Count III). The Trustee now moves for summary judgment on Count I. The Trustee seeks $17,145.00 as reimbursement for the second cleanup and an equal amount for the first cleanup (for a total of $34,290.00) on the theory that the only source of the waste after July, 1987 was the Defendant's pipeline. The Trustee asks for a judgment in his favor for compensatory damages in the amount of $34,290.00 and for his costs, attorneys' fees and prejudgment interest.

## IV. DISCUSSION

■ The Trustee argues that the Sale Contract is not enforceable against the Trustee. First, the Trustee argues that the Addendum to the Sale Contract granted at most a revocable license to Cuneo to discharge the Zoo Do onto the Debtors' property. The Trustee argues that as a matter of law, a license terminates upon the conveyance of the property out of the hands of the licensor. The trustee alleges that the filing of bankruptcy was such a conveyance because under the Bankruptcy

Code all of May's interest in the property vested in the bankruptcy estate and eventually in the Trustee. Thus, the license was terminated and the Trustee has an action for trespass.

Second, the Trustee argues that the license expired on its own accord due to the fact that it was limited to "so long as Seller (or Seller's spouse, any relative of either of them, or any agent or trustee of any of the foregoing) shall *own* and operate" the property. (emphasis added). Again, once the property vested in the Debtors' estate and then in the Trustee[2], the Debtors' no longer owned the property in the manner set forth in the addendum. The license therefore terminated by its own terms on the commencement of the case in 1982.

Lastly, the Trustee argues that not only did the Debtors no longer own the property but they no longer *operated* the property as required by the terms of the license. Once the case was converted to a Chapter 7 on July 7, 1987, operations ceased and the property was no longer operated in the manner set forth in the addendum.

Cuneo argues that there are genuine issues of material fact in dispute and that the Trustee failed to prove the elements of a trespass in his motion. Cuneo argues that the interest created by the Sale Contract was an easement by implication and not a license.

If the interest is a license and not an easement by implication, a license is not terminated until the licensor gives notice or performs some act that is inconsistent with the enjoyment of the license. Cuneo argues that neither the Trustee nor the Debtors ever gave actual written or oral notice to terminate the license. Moreover, the Debtors continued to use and receive the benefits of the Zoo Do. Cuneo alleges he received, at best, constructive notice when, in the context of the Illinois Environmental

---

1. The Trustee alleges that he was never made aware or informed of the existence of the pipeline until this time and was not aware of the existence of the license to deposit the Zoo Do until the Sale Contract was filed as an exhibit to Cuneo's answer in this adversary proceeding.

2. The Trustee distinguishes the word "trustee" in the agreement from a bankruptcy trustee. He argues that a bankruptcy trustee is not a "trustee of" a debtor but a trustee for the benefit of the creditors. The bankruptcy trustee is outside of the group of trustees referred to in the agreement, which would be a testamentary or a land trustee.

Protection Agency proceedings (September 10, 1988), the Trustee attempted to plug the sewer line.

Finally, Cuneo argues that even if Cuneo committed a trespass by continuing to use the sewer pipe, the damages requested by the Trustee are out of proportion to the injuries suffered by him. Cuneo argues that its waste was only water waste and, on information and belief, that it was mixed with the Hillview Farm animals' solid waste and with waste from other outside sources. At most, Cuneo argues that Cuneo is responsible for cleaning only one of the five pits at an amount far less than $17,000 a cleaning.

The court agrees with the Trustee that the interest created by the Addendum to the Sale Contract was a license. Cuneo cites *O'Hara v. Chicago Title & Trust Co.*, 115 Ill.App.3d 309, 71 Ill.Dec. 304, 309, 450 N.E.2d 1183, 1188 (1st Dist.1983), for the definition of an implied easement. The use of the Debtors' property created by the Sale Contract did not exist before the sale of the land to Cuneo, nor was it "so long-continued, obvious or manifest that it would show the use was meant to be permanent." Furthermore, May did not sell the property without mentioning the pipeline. The Addendum to the Sale Contract explicitly described the interest created. The interest created by the Sale Contract was a license. The license gave Cuneo permission to dispose of the Zoo Do onto the Debtors' property through an underground pipeline. It is well established that "a license is permission or authority to do particular acts upon the lands of another, with no estate or interest in the land created." (citations omitted). *In re Wolff (Frank's Service Center v. Amoco Oil Company)*, 41 B.R. 472, 474 (Bankr.N.D. Ill.1984).

The issue in this case is when the license was actually terminated. When was the license terminated so that Cuneo's continued use of the pipeline could be deemed a trespass on the property of the estate? As stated in 3 *Law of Real Property* Licenses § 836,

A license may be revoked either by express words to that effect, or by an act of the licensor indicating an intention to revoke, as when he makes exercise of the license impossible.

In order to revoke a license, the termination must be effected or manifested in some manner to the licensee. In the case at hand, the license was granted for an indefinite period of time, namely, "For so long as Seller ... shall own and operate" the property. The commencement of this bankruptcy case did not automatically terminate the license. The case cited in the Trustee's Memorandum in Support of Plaintiff's Motion for Summary Judgment, *Coar v. Brown*, 29 B.R. 806 (N.D.Ill.1983), does not convince the court that the commencement of a bankruptcy case and the alleged creation of the separate entities is the same as a conveyance that would terminate the license in question. The commencement of this bankruptcy may have been grounds for terminating the license but it did not automatically terminate the license.

It is true that the pipeline carrying the Zoo Do to the estate's property was underground and, thus, virtually undetectable. The Debtors may have had a duty to disclose the existence of the pipeline to the Trustee but it appears from what has been put before the court that no one did so. The Trustee's inquiry about the operations which were conducted on the Mays' property, which included the production of fertilizer, apparently failed to disclose the source of the Zoo Do.

Perhaps the Debtors had a duty to inform the Trustee of the pipeline and the Sale Contract after his appointment, but this in and of itself does not affect the rights of Cuneo.

Fertilizer production ceased on or before July 7, 1987. The Trustee argues that Cuneo had notice and knew of this cessation of work when the Mays' no longer collected the manure every two days as required by the Addendum. Cuneo argues that he never deposited solid animal waste, only liquid waste. Whether Cuneo had knowledge of the termination of the fertil-

352

izer production operations and with it the termination of the license as the Trustee argues will have to await determination at a trial of the complaint.

The motion for summary judgment will have to be denied.  It is not clear to the court if the license was terminated prior to the actual blocking of the pipeline on or about September 10, 1988 or before.[3]  The Trustee had a right to terminate the license.  It is uncontested that express words terminating this license were never communicated to Cuneo.  What is contested is whether the Trustee performed an act that was sufficiently communicated to indicate to the licensee (Cuneo) that the license was gone.

The court is of the opinion that at least an evidentiary hearing is needed to determine the unanswered question of when the license to use the Debtors' holding pits was terminated.  Moreover, the amount of damages is in dispute.  The Trustee argues that the cost of cleaning the pits is $34,-290.00, while Cuneo argues it is approximately $390.00.  Evidence on this issue will be required.

### V.  CONCLUSION
For the foregoing reasons, the court denies the motion for summary judgment.

---

3.  The Trustee alleges in his affidavit and in his statement of uncontested facts that Cuneo agreed in writing to clean out the pits but never did so.  Cuneo responded that he did execute the letter but that this letter was executed after the last date for which the Trustee claims damages.  The writing was not attached to the affidavit that the court received.  Thus, the court has not examined this document.